UNITED STATES of AMERICA
U.S. DISTRICT COURT -- WESTERN DISTRICT OF MICHIGAN

BRIAN WILKINS,

    Plaintiff,   DEMAND FOR JURY TRIAL

-vs-

    Case No.
    Hon.

TODD WENZEL BUICK, GMC, INC.,

    Defendant.

_____

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1. This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2. As to any supplemental claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

### PARTIES

3. The Plaintiff to this lawsuit is Brian Wilkins, ("Plaintiff" or Mr. Wilkins"), who resides in Grand Rapids, Michigan in Kent County.

4. The Defendant to this lawsuit is Todd Wenzel, Buick, GMC, Inc. ("Wenzel") which is a corporation doing business in Michigan and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, Richard H. Austin Building – 3rd Floor, 430 W. Allegan Street, Lansing, MI 48918.

5.      At all relevant times Wenzel, in the ordinary course of its business, regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than four installments and is the person to whom the transaction which is the subject of this action is initially payable.

6.      Wenzel is a creditor under TILA, 15 U.S.C. § 1602(g) and regulation Z § 226.2(a)(17).

7.      Wenzel is a creditor under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq and Regulation B.

## VENUE

8.      The transactions and occurrences which give rise to this action occurred in Grand Rapids, Michigan, Kent County.

9.      Venue is proper in the Western District of Michigan.

## GENERAL ALLEGATIONS

10.     On January 7, 2015, Mr. Wilkins went to Wenzel to purchase a used automobile. He was met by salesperson Wendy Wierckz who introduced Mr. Wilkens to a finance manager, Jesse Porter.

11.     Mr. Wilkens immediately advised Mr. Porter of his adverse credit and money situation and asked whether Wenzel could get him financed in light of his relatively low income and bad credit.

12.     Mr. Porter took some personal and financial information from Mr. Wilkins and then arranged to have 2 different vehicles driven to the front for Mr. Wilkins to examine and test drive, purportedly both available for Mr. Wilkins to finance and purchase, given his financial situation noted above.

13.     Mr. Wilkins took a 2003 VW Passat Wagon for a test drive, (one of the two vehicles driven

2

to the front), and quickly decided this was the vehicle he wanted to purchase.

14. After returning from the test drive and notifying Mr. Porter of his decision to purchase the VW Passat, Mr. Porter advised Plaintiff that he would get to work on the documentation to close the deal. Mr. Porter informed Mr. Wilkins that he needed copies of bank statements, paycheck stubs, and proof of insurance for the vehicle.

15. In response, Mr. Wilkins provided cell phone screenshots of bank statements for the previous six (6) months, his two most recent pay stubs, and proof of insurance as requested. After waiting with Ms. Wierckz for several hours, Mr. Porter finally asked Plaintiff to come into his office where Mr. Wilkins proceeded to sign various documents. Mr. Wilkins waited another hour or so as Mr. Porter advised he was waiting for the bank to fund the loan. At about 5:30 p.m. that day, Mr. Porter advised Plaintiff that he was all set and that he could take the car and come back the next day to get his registration.

16. Prior to leaving Wenzel, Mr. Wilkins did request a temporary registration as the car was now insured in his name, as well as requesting a copy of all of the documents relating to transaction which he had signed. Mr. Wilkins was told all documents would be provided to him upon funding of the loan. Thus, Wenzel failed to provide Mr. Wilkins with the sales and finance documents as required by law as outlined further below. Prior to leaving, Mr. Porter attached a dealer license plate to the subject vehicle.

17. On January 9, 2015 Mr. Wilkins stopped in to Wenzel because he had not heard back regarding the registration and other documents he was promised. When he walked in he was met by Ms. Wierckz who promptly went to ask Mr. Porter for the registration. She came back a few minutes later and said the loan had still not been funded. Ms. Wierckz also advised Plaintiff that Mr. Porter would be contacting him as soon as the loan was funded and that Plaintiff would be

3

given the registration and other documents at that time. This same day Plaintiff also received a welcome letter from the purported finance company, Credit Acceptance Corporation, ("CAC"), **(Exhibit A)**, as well as a payment booklet with a reminder of the first payment which was allegedly due on February 7, 2015.

18. On Saturday, January 10, 2015, Mr. Wilkins stopped in to Wenzel once again to request registration and other transaction documentation. Mr. Porter came out a few minutes later with an envelope that included the Odometer Disclosure Statement, Sales Agreement, confirmation of insurance, notice of "as-is" vehicle, Application for Michigan Title and Registration, and Receipt for Down payment of $600.00. Mr. Porter again advised Mr. Wilkins that the loan would need to be funded before he would be provided with a registration for the vehicle. Mr. Wilkins was understandably worried about the prospect of driving a vehicle which was not street legal and not registered, but dealer representatives in incorrectly advised him there was no problem with this.

19. On January 12, 2015 Ms. Wierckz emailed Mr. Wilkins stating the financing from CAC was rejected because of some alleged issue with Mr. Wilkins' bank statements. She also advised Mr. Wilkins that he would be required to come to the dealership to have a GPS tracking system installed on the vehicle, and that only after that occurred could the registration issue be discussed. This news was very stressful to Mr. Wilkins because his sales job depended on dependable transportation and he was worried that somehow he would lose his vehicle. It was also confusing to Mr. Wilkins, given that he had previously received an acceptance of financing from CAC, (Exhibit A).

20. On January 13, 2015, Mr. Porter requested paycheck stubs for weeks that Mr. Wilkins had already informed him he had not worked. After several more phone calls and emails between Plaintiff and Wenzel employees, Plaintiff decided to go back to the dealership on Wednesday January 21, 2015, and try to have the matter resolved once and for all.

21. On January 13, 2015, after asking to speak with Mr. Porter and a 45-minute wait Mr. Wilkins was finally summoned to Mr. Porter's office, ominously accompanied by another Wenzel employee, Matt Wyss, Financial Director. Mr. Wyss proceeded to advise Mr. Wilkins that the dealership was taking his vehicle back from Mr. Wilkins. Mr. Wyss also stated that Mr. Wilkins needed to provide paycheck stubs for the last two weeks of December, 2014 to be considered for financing, even though Wenzel had already advised the State of Michigan that CAC had financed the deal.

22. After hearing the disturbing and confusing news outlined above, Mr. Wilkins excused himself to make a phone call to CAC who informed him that they were the lien holder, not the dealership, and that he had already been financed with a payment due very soon.

23. After the above referenced phone call with CAC, Plaintiff met again with Mr. Porter and Mr. Wyss and informed them of the conversation with CAC. Despite hearing this information, both employees insisted that the dealership still owned the subject vehicle. When asked, the employees had no explanation as to why Mr. Wilkins was allowed to drive the vehicle on a dealer plates for three weeks and now suddenly was not able to. Mr. Wilkens then requested his down payment back and advised them that he wanted out of he transaction.

24. Before leaving the dealership Ms. Wierckz apologized to Plaintiff and handed him a check for $480.00 which was not the entire down payment. When asked why all of his money was not returned, Plaintiff was advised that he was randomly charged a pro-rated amount for the time he drove the car. Mr. Wilkins had to call his brother for a ride, and his brother had to drive 30 miles from Hastings, Michigan to pick him up. Plaintiff's vehicle was stolen by Wenzel.

25. As a result of the above events, Mr. Wilkins lost his job. He was forced to take a different job and was left without transportation for months. Currently he shares a vehicle with a family

member, which makes him feel like beggar, and is embarrassing and demeaning. Mr. Wilkins went to other dealerships in an attempt to purchase another vehicle, but was unable to obtain financing because he had an open loan showing on his credit report for the car he purchased from Wenzel.

26. On February 17, 2015, Mr. Wilkins was contacted by Cindy Miller from the Michigan Department of State in regards to a complaint he filed regarding the above allegations. Ms. Miller requested documentation which Mr. Wilkins provided and forwarded the complaint to Jason Lawrey, Department of State Attorney. Mr. Lawrey completed his investigation and found multiple violations, (See letter **Exhibit B**). Mr. Lawrey went to Wenzel in person and instructed Mr. Wyss to contact Plaintiff and immediately refund the remainder of the down payment as well as return the subject back to Mr. Wilkins. However, Wenzel sold the subject vehicle, further depriving Plaintiff of his property.

27. This experience as alleged above has adversely affected every part of Mr. Wilkins' life, including his job status, credit issues, personal life, relationships, self respect, emotions, and has taken away his ability to reasonably purchase reliable transportation.

## COUNT I
## FRAUD AND/OR MISREPRESENTATION

28. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

29. Defendant made material representations to Plaintiff that:

(a) the purchase was being financed by CAC;

(b) the loan application was in fact approved for financing,

(c) Plaintiff could take delivery of the subject vehicle and begin making monthly payments that were required under the finance contract without fear of the vehicle being recalled, stolen or repossessed by Defendant.

6

30. Defendant made these representations with the intent that Plaintiff rely upon them.

31. The foregoing representations were false.

32. Plaintiff did, in fact, rely upon the representations of Defendant.

33. Plaintiff was harmed by his reliance on the misrepresentations of Defendant.

34. Defendant benefitted from Plaintiff's reliance.

35. As a direct and proximate result of Defendant's aforedescribed misrepresentations, Plaintiff has suffered the damages set forth below, as well as mental anguish, embarrassment, damage to his credit rating, fear, frustration, and humiliation.

WHEREFORE, Plaintiff prays for judgment against Defendant in whatever amount Plaintiff is found to be entitled, along with equitable damages including, but not limited to possession of the subject vehicle along with financing, plus interest, costs and reasonable attorney fees.

## COUNT II
## NEGLIGENCE

36. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

37. At all times relevant hereto, Defendant owed the following duties to Plaintiff:

(a) To process his paperwork including finance applications, truth-in-lending forms, and any other documentation which is required by law, so that the purchase of the subject vehicle would be accomplished;

(b) To do everything reasonably within their control to assure that the loan applications were processed and to inform Plaintiff of any denials of financing;

(c) To do everything within their control to remedy the problems which were created by their own failings and oversights when difficulties with processing the necessary paperwork and financing Plaintiff's vehicle became apparent.

(d)  To apply Plaintiff's down payment of $600.00 to the purchase of the subject vehicle, or if the deal was rejected, to promptly inform Plaintiff of the credit denial and return said money.

38. Defendant breached the aforesaid duties.

39. The breach of these duties by Defendant proximately caused harm to Plaintiff, as hereinbefore stated.

WHEREFORE, Plaintiff prays for judgment against Defendant in whatever amount Plaintiff is found to be entitled, along with equitable damages including, but not limited to possession of the subject vehicle or a substitute, along with financing, plus interest, costs and reasonable attorney fees.

## COUNT III
## BREACH OF CONTRACT

40. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

41. The above described transaction, involving words, conduct, and documents, encompassed a contract, where in Plaintiff agreed to purchase an automobile from Defendant for a stated sum of money and Defendant agreed to sell said vehicle and provide financing.

42. Plaintiff performed all of the duties required of them under the contract in question.

43. Defendant breached the contract, by not processing the paperwork as promised or by representing to Plaintiff that the paperwork had been processed and accepted by CAC, and by wrongfully taking possession of the automobile which is the subject of the contract, despite the fact that the automobile rightfully belonged to Plaintiff.

44. The aforesaid breach of the contract by Defendant has caused Plaintiff direct harm, including but not limited to, the cost of covering the contract elsewhere, lost expectations, out of pocket expenses and costs including loss of use of the subject vehicle cost of alternative

8

transportation, automobile insurance, and other damages described herein including, but not limited to those damages listed below, mental anguish, embarrassment, damage to credit rating, fear, frustration, and humiliation..

WHEREFORE, Plaintiff prays for judgment against Defendant in whatever amount Plaintiff is found to be entitled, along with equitable damages including, but not limited to possession of the subject vehicle or a similar vehicle along with financing, plus interest, costs and reasonable attorney fees.

## COUNT IV
## EQUAL CREDIT OPPORTUNITY ACT, CFR 202.2, ET. SEQ

45. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

46. Plaintiff is an "Applicant" as defined in the Equal Credit Opportunity Act, CFR 202.2(e).

47. Defendant is a "Creditor" as defined in the Equal Credit Opportunity Act, CFR 202.2(l).

48. In the course of the transactions which are the subject of this lawsuit, Defendant engaged in following conduct:

(a) Defendant failed to properly notify Plaintiff of credit denial or make a counter offer within 30 days of the date of credit denial..

(b) Defendant refused to grant credit to Plaintiff in substantially the terms and amount requested after Plaintiff accepted those terms.

49. The above described conduct violated the Equal Credit Opportunity Act, specifically but not limited to the following: CFR 202.9(a)(1) and CFR 202.9(a)(2).

50. As a result of the Defendant's actions above Plaintiff has suffered the following damages: the loss of use of the vehicle, the cost of obtaining alternate transportation, derogation of Plaintiff's credit record, insurance costs, and humiliation and embarrassment, and Plaintiff is also entitled to

statutory damages and attorney fees and punitive damages of $10,000 as provided in the Code of Federal Regulations Equal Credit Opportunity Act, CFR 202.2 Et. Seq.

WHEREFORE, Plaintiff prays for Judgment against Defendant in whatever amount Plaintiff is found to be entitled, along with equitable damages including, but not limited to possession of the subject vehicle or similar vehicle, along with financing, together with statutory and punitive damages, interest, costs and reasonable attorney fees as provided by statute.

## COUNT V
## VIOLATION OF MICHIGAN MOTOR VEHICLE CODE, MCL §257.1, ET SEQ.

51. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

52. Defendant is subject to the provisions of the Motor Vehicle Code (MCL §257.1, ET SEQ.).

53. In the course of the transactions which are the subject of this lawsuit, Defendant engaged in following conduct:

(a) Defendant failed to complete an assignment and warranty of title upon the certificate of title, and make an application for registration and a new title as provided in MCL 257.217(2).

(b) Defendant failed to properly endorse and deliver certificate of title to Plaintiff who was lawfully entitled thereto.

(c) Defendant failed to deliver the certificate of title to the holder of the security interest.

(d) Defendant failed to deliver proper title to Plaintiff within 15 days.

(e) Defendant failed to provide Plaintiff with a vehicle registration.

54. The above described conduct violated the Michigan Motor Vehicle Code, specifically but not limited to the following provisions: MCL 257.217(2), MCL 257.235, MCL 257.238, and MCL 257.239.

55. As a result of the Defendant's actions above Plaintiff has suffered the following damages: the

cost of covering the contract elsewhere, lost expectations, out of pocket expenses and costs including loss of use of the subject vehicle, cost of alternative transportation, automobile insurance, and other damages described herein including, but not limited to mental anguish, embarrassment, damage to Plaintiff's credit rating, fear, frustration, and humiliation.

WHEREFORE, Plaintiff prays for Judgment against Defendant in whatever amount Plaintiff is found to be entitled, along with equitable damages including, but not limited to possession of the subject vehicle or the equivalent, along with financing, together with statutory and punitive damages, interest, costs and reasonable attorney fees as provided by statute.

## COUNT VI
### VIOLATION OF 15 U.S.C. 1602, ET. SEQ. (TRUTH IN LENDING ACT)

56. Plaintiff incorporates by reference all facts and allegations set forth in his complaint.

57. Plaintiff is a "person" as defined in 15 U.S.C. 1602(d).

58. Defendant is a "creditor" as defined in 15 U.S.C. 1602(f).

59. In the course of the transactions which are the subject of this lawsuit, Defendant engaged in following conduct:

(a) Defendant set forth terms and conditions on its Motor Vehicle Purchase Agreement (truth in lending form), and other documents which were signed by Defendant and Plaintiff, which terms and conditions were untrue and incorrect.

60. The above described conduct violated the Truth in Lending Act, specifically but not limited to the disclosure requirements and other requirements set forth in 15 U.S.C. 1631.

61. As a result of Defendant's above referenced violation of statute, Plaintiff have suffered the damages enumerated below.

WHEREFORE, Plaintiff prays for Judgment against Defendant in whatever amount Plaintiff

is found to be entitled, along with equitable damages including, but not limited to possession of the subject vehicle or its equivalent, along with financing, together with statutory and punitive damages, interest, costs and reasonable attorney fees as provided by statute.

## COUNT VII
## STATUTORY CONVERSION *MCLA 600.2919(a)*

62. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

63. During the course of this transaction, Defendant came into possession of various property, belongings and monies of Plaintiff, including but not limited to: the vehicle in question, and a $600.00 down payment.

64. Defendant wrongfully, and without permission of Plaintiff, exerted dominion over the aforementioned items and monies, and converted them to its own use.

65. Defendant converted the items and monies to its own use intentionally and willfully.

WHEREFORE, Plaintiff prays for judgment against Defendant in whatever amount Plaintiff is found to be entitled, as well as statutory trebling of the damage award pursuant to the statute, plus interest, costs and reasonable attorney fees.

## COUNT VIII
## COMMON LAW CONVERSION

66. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

67. The above described actions by Wenzel constitute a conversion under the common law of this state.

68. As a result of this conversion Plaintiff suffered total damages in the amount of the value of the subject vehicle at the time of conversion, plus incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in whatever amount Plaintiff is found to be entitled, plus interest, costs and reasonable attorney fees.

## COUNT IX
## WRONGFUL REPOSSESSION UNDER THE UCC

69. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

70. Pursuant to MCL 440.9503, Wenzel had no right to possession of the vehicle according to the terms of the security agreement which governed the relationship.

71. Under MCL 440.9507, Wenzel is liable for an amount equal to the finance charges plus 10% for violation the Article 9 of the Uniform Commercial Code.

72. Accordingly, Plaintiff requests that this court grant judgment in favor of Plaintiff all recoverable damages including his finance charges plus 10%, plus costs and attorney fees associated with recovery of these damages.

WHEREFORE, Plaintiff requests that this Court grant the damages requested in Count I above, and for violation of the UCC in the amount of the finance charges plus 10%, plus costs and attorney fees and any other relief authorized by law.

## COUNT X
## FAIR CREDIT REPORTING ACT

73. Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

74. By not getting Plaintiff financed, Wenzel was under an obligation to finance the vehicle itself.

75. Accordingly, Wenzel participated in the lending process, and was thus subject to the requirement of the Fair Credit Reporting Act, ("FCRA").

76. The Fair Credit Reporting Act requires auto dealers that lend money themselves and participate in the lending process, they are required just like lenders to provide "risk based pricing notice, ("RBPN"), to consumers in accordance with 15 U.S.C. §1681m(h).

13

77. Wenzel did not provide a RBPN to Plaintiff.

78. This failure to provide a RBPN constitutes a negligent or willful violation of the FCRA, 15 U.S.C. §1681n.

79. As the result of Wenzel's inaction outlined above, Plaintiff suffered damages, including actual damages, statutory damages and attorney fees and costs, all recoverable under the FCRA.

WHEREFORE, , Plaintiff prays for judgment against Defendant in whatever amount Plaintiff is found to be entitled as mandated by the FCRA, plus costs and reasonable attorney fees.

## REQUEST FOR RELIEF

Mr. Wilkins requests that this Honorable Court grant the following relief:

1. Assume jurisdiction over this case including all supplemental claims.

2. Award actual damages.

3. Award statutory and punitive damages, including damages for emotional distress.

4. Award statutory costs and attorney fees.

5. Award equitable/declaratory relief including an Order compelling Defendant to retract any derogatory credit reporting regarding Plaintiff, and return the subject vehicle or it's equivalent.

6. Award any other relief which is appropriate fair and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the above entitled cause.

Respectfully submitted,

By: **/s/ Adam S. Alexander**
Adam S. Alexander (P53584)
Andrew R. Mikos (P76268)
The Alexander Law Firm
Attorney for Plaintiff
17200 W. Ten Mile Rd. Suite 200
Southfield, MI 48075
(248) 246-6353


April 16, 2015

**EXHIBIT "A"**

# EXHIBIT

# "A"

REPRESENTATION OF PRINTED DOCUMENT

Credit Acceptance Corporation
25505 West Twelve Mile Road
Southfield, MI 48034
(248) 353-2700
www.creditacceptance.com



January 28, 2015

51413 0000063 001
BRIAN WILKINS
624 BATES ST SE
GRAND RAPIDS MI   49503-5502

Re: Contract No: 79304604
Vehicle Year, Make and Model: 2003 Volkswagen Passat
VIN: WVWYH63B53E401109
Selling Dealer: Todd Wenzel Buick Gmc, Inc

Dear Valued Customer:

Your retail installment contract with Credit Acceptance Corporation ("Credit Acceptance") has been assigned to your above-referenced Selling Dealer for collection, servicing and administration.

Please notify your insurance company that Credit Acceptance is no longer the lien holder for the above-referenced vehicle. If your title is in the possession of Credit Acceptance, we will provide it to your Selling Dealer with our lien released from your vehicle. If you hold the title to your vehicle, we will execute a lien release to your Selling Dealer.

**All future payments required by your contract for the above-referenced vehicle must be remitted to your selling Dealership at the address listed below:**

Todd Wenzel Buick Gmc, Inc.
2727 28th Street Se
Grand Rapids, Mi 49512
(616) 975-3623

You may also contact your selling Dealership regarding your contract and/or vehicle at the above-reference address and telephone number.

Thank you.
**The Credit Acceptance Team**

Cc:   TODD WENZEL BUICK GMC, INC

1018-FINREASGN-M

INTERNET REPRINT

**EXHIBIT "B"**

# EXHIBIT

# "B"



STATE OF MICHIGAN
RUTH JOHNSON, SECRETARY OF STATE
DEPARTMENT OF STATE
LANSING

April 14, 2015

Brian Wilkins
717 Diamond Ave
Grand Rapids, MI 49503

Case Number: **336087**

RE: Your Complaint Against Todd Wenzel Buick GMC Inc

Dear Brian Wilkins,

The Michigan Department of State, Regulatory Monitoring Division has completed its investigation of your complaint against Todd Wenzel Buick GMC Inc. The results of the investigation indicate that the Dealer violated the Michigan Vehicle Code and accordingly, appropriate Notices of Non-Compliance have been issued.

As discussed with you previously, the Dealer has agreed to reimburse you in the amount of $120 for the remaining deposit owed.

An investigative report and supporting documents will be forwarded to the Business Licensing and Regulation Division for consideration of administrative action against the licensee. You may obtain a copy of the investigation under the Freedom of Information Act (FOIA). You can request documents under FOIA by emailing the Business Licensing and Regulation Division at Licensing@Michigan.gov or faxing your FOIA request to (517) 335-2810. Please indicate "**FOIA Request**" in the subject of the email or at the top of the faxed request.

If you have questions regarding your complaint, please call 1-888-767-6424.

Sincerely,

Jason Lowrie

REGULATORY MONITORING DIVISION
RICHARD H. AUSTIN BUILDING • 3RD FLOOR • 430 W. ALLEGAN • LANSING, MICHIGAN 48918
www.Michigan.gov/sos • 1-888-SOS-MICH (1-888-767-6424) FAX 517-373-7419

Case Closure Letter with NNCs (05/2013)